By the Court.
The defendant in error brought suit in the court of common pleas to recover damages by reason of violation of implied covenants contained in a lease for oil and gas executed to the plaintiff in error, as lessee, on December '5, 1910.
At the time of the execution and delivery of this lease the premises were wholly in undeveloped and virgin territory. The petition alleges that the lease contained a provision whereby the lessee agreed to drill a well on said premises within six months from the date of said lease, or pay the lessor forty dollars each three months, thereafter, in advance, until such well was drilled or the lease surrendered; that under the provisions of the lease the lessee had the right to surrender and did surrender the same on February 29, 1916; that from the date of its execution until its surrender the lands contained natural gas in paying quantities; that because of *107 their location near other lands on which there were developed “active and flowing wells, her lands became liable to and were drained to a large extent of the natural gas therein contained;” that because of the failure of the lessee to drill a sufficient number of gas wells to offset the active wells on adjoining premises, and because of the fleeting and transitory nature of the same, the gas under her premises was permitted to escape and to be drained into the gas wells on such adjoining premises. The plaintiff alleged in her petition that there arose out of said lease an implied agreement that the defendant would drill and operate such number of wells on her lands as would ordinarily be required for the protection of gas and oil contained thereunder, and as would afford ordinary protection to the lines of her said land, so as to prevent damage by reason of such drainage; that in violation of said implied agreement the lessee failed and refused to drill various wells on her said premises to protect the lines of her land and thereby offset the wells drilled on the lands adjoining thereto.
In its answer the defendant admitted the execution of the lease, and the covenants therein, as pleaded, but denied generally all other allegations contained in the petition.
Plaintiff recovered a verdict and judgment in the court of common pleas, which was affirmed by the court of appeals.
On the trial, touching the burden of proof, the court, in its general charge, charged the jury as follows: “The burden of proof is upon the plaintiff to prove-the surrounding circumstances and condi *108 tions to her land, the location and productivity of the gas wells claimed to be located upon adjoining lands and which she claims are under-draining her land. The burden of proof is upon her to prove by a preponderance of the evidence that she has been damaged by failure to drill offset wells, as claimed in her petition; but the burden of proof, to prove by a preponderance of the evidence, that there is no gas, or was no gas under her lands during the period of the said lease, which would justify the said defendant, as an ordinary, prudent man, to drill for gas, is upon the defendant, and the defendant must prove by a preponderance of the evidence that fact.”
That part of the charge placing the burden of proving damage upon the' plaintiff and then shifting this burden upon the defendant by requirement that the burden was upon it to show that there was no gas under the land would necessarily confuse the jury upon this issue. What the trial court had probably in mind was this, that the plaintiff having proved the circumstances and conditions surrounding, together with the location and productivity of gas wells upon adjoining lands, the burden of proof then shifted, and it became incumbent upon the defendant to prove by a preponderance of the evidence that there was no productive gas under her lands during the life of the lease. In attempting to shift the burden upon this issue the trial court erred. The main issue of fact in the case was this: Was there productive gas, of sufficient quantity to warrant operations, under the lands of the lessor, and was the same drained into the wells on adjoin *109 ing lands by reason of the failure of the lessee to drill wells for the protection of the lessor’s lines?
Any testimony of the plaintiff tending to show the surrounding circumstances, the location and productivity of wells on adjoining territory, the transitory nature of gas, the direction of its flow, or any other competent evidence tending to show that gas existed under her lands in sufficient quantity to warrant the expense of drilling and marketing, would be affirmative evidence tending to prove that the lessor was damaged. This affirmative issue was assumed by the plaintiff and carried the burden of proof thereon throughout the entire case. Evidence offered by the defendant, that there was no gas, or that there was insufficient gas, merely negatived that issue. This rule, imposing the burden of proof upon plaintiff, has been approved in the following cases: Grass et al. v. Big Creek Development Co., 75 W. Va., 719, and Steele et al. v. American Oil Development Co. et al., 80 W. Va., 206.
We do not, however, hold that the proof required must be clear and convincing upon this issue. It was sufficient for the plaintiff to prove it by a preponderance of the evidence.
The defendant in error insists that this rule of proof has been qualified by Cook v. Andrews & Hitchcock, 36 Ohio St., 174, and Brick Co. v. Pond, 38 Ohio St., 65. These two Ohio cases, however, are readily distinguished. In both of them the lessee covenanted to pay a fixed and definite annual rental whether mining operations were carried on or not. In each of them it was incumbent upon the *110 lessee to mine or pay the annual rental. The latter it refused to pay and suit was brought. In each case it was held that the lessee was liable on his express covenant to pay the fixed sum agreed upon and that it was incumbent upon the lessee to show the non-existence of mineral in order to escape liability for what might be termed delay in mining. Had the plaintiff in this case sued to recover for the delay rentals agreed to by the express covenant of this lease, the situation would be analogous. For the reasons stated the judgments of the common pleas court and the court of appeals are reversed and the cause remanded for further proceeding according to law.
Because of the complexity and confused state of this record we have -not passed upon the major questions affecting the right of the plaintiff to recover, since it is desirable that upon retrial the legal questions involved should be presented in a more succinct and tangible form.

Judgments reversed.

Jones, Matthias, Johnson, Wanamaker and Robinson, JJ., concur.